PHYFE *vs.* RILEY.

Phyfe
v.
Riley.

*Trustees,* appointed under the *absconding, concealed and non-resident debtor act,* are entitled to *redeem* the lands of the debtor, of whose estate they have charge.

Such redemption, however, does not entitle the trustees to a deed of the property sold, or authorize them to direct the execution of the deed to a third person; its effect is the same as would be a redemption by the debtor himself, and not otherwise.

A *purchaser* is not bound to accept the amount of his bid from a person who has no right to redeem, and may insist that the deed be executed to him in pursuance of the sale; but if he accepts the money, though paid by a stranger, his right to a deed is gone.

A *mortgagee* in possession of the mortgaged premises, lawfully acquired after condition broken, cannot be dispossessed by an action of ejectment commenced against him. The revised statutes have not altered the law in this respect.

THIS was an action of ejectment, tried at the New-York circuit in May, 1834, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff claimed to recover a moiety of a lot as a purchaser at a sheriff's sale, under three executions against *Edward Burke,* issued on judgments entered against him in 1825 and 1828. The sale took place in May, 1831, and the sheriff's deed was executed 20th December, 1833, as of the date of 12th August, 1832. *Joseph Burke,* the father of Edward Burke, died intestate in 1830, seized of the lot in question, leaving two children his heirs at law, viz. his son Edward and a daughter named Julia Ann, the wife of Joseph Dennis. The defendant was admitted to be in possession of the whole lot. In defence, it was shown that, on the 31st December, 1831, John W. Miller and two other persons who had been appointed *trustees* in certain proceedings had against *Edward Burke* as a *non-resident debtor,* commenced in March, 1830, paid to the plaintiff the amount of the money paid by him to the sheriff on the purchase of the property, together with ten per cent. advance, and took the plaintiff's receipt therefor. The defendant also produced the following documentary evidence: 1. A deed from Edward Burke to Joseph Dennis of a *moiety* of the lot, bearing date 17th February, 1830, and recorded 19th April, 1830. 2. A deed of the *whole*

lot from Joseph Dennis and Julia Ann his wife, to the defendant, dated and recorded 19th March, 1831. The consideration expressed is $3000, and the conveyance is declared' to be subject to the incumbrance of a mortgage of $2000. 3. A mortgage of the whole lot from *Joseph Burke*, the father of Edward and Julia Ann, to the Washington Insurance Company, for $2000, recorded 13th March, 1827, payable 2d July, 1827. 4. An assignment of the mortgage to the defendant, dated 1st July, 1833. To rebut this evidence on the part of the defendant, the plaintiff proved that, on the 18th December, 1833, the *trustees* of the estate gave written directions to the sheriff of New-York to execute a deed to the *plaintiff* in pursuance of the sale, of the moiety of the lot sold under the executions against Edward Burke ; and also that a day or two after the first publication of the issuing of the attachment against Edward Burke, which took place on the 27th March, 1830, *Dennis,* who was then in possession of the lot, acknowledged that he had no deed of the premises from Edward Burke ; and further, that on the 11th August, 1832, *Riley,* the defendant in this cause, stated that he had bought the whole lot of Dennis, and had reserved $1500, part of the consideration money, to pay off the judgments. The evidence of the declarations of Dennis, in reference to his not having a deed from Burke, was objected to by the defendant, but admitted, subject to exception. On these facts a verdict was entered for the plaintiff, subject to the opinion of this court.

*J. W. Gerard,* for the plaintiff, insisted that the defendant could not claim any thing under Burke's deed, as it was executed subsequent to the docketing of the judgments under which the plaintiff claimed. The *trustees* having redeemed the property, were entitled to a deed from the sheriff, which, instead of requiring it to be executed to themselves, they directed to be executed to the plaintiff, as they had a right to do. 1 *Wendell,* 46. If the trustees had the power to redeem, they might direct the deed to be executed to any one whom they thought proper to designate ; if they had not such right, then the plaintiff's right to a deed under his purchase at the

sale was unquestionable. He contended that the deed from Dennis to the defendant, though it bore date previous to the first publication of the issuing of the attachment, did not prevent the title of the trustees attaching, inasmuch as after the publication, Dennis conceded that he did not hold a deed from Burke ; and at all events, if executed, it was not delivered until after the publication.

The counsel also insisted, that the revised statutes having abolished the right of a *mortgagee* to bring an action of ejectment for the recovery of the mortgaged premises until after foreclosure, 2 *R. S.* 312, § 57, a mortgagee, or his assignee in possession, cannot avail himself of the mortgage as *title* to bar a recovery. A mortgage is a mere *lien*, and of no more efficacy to prevent a recovery by a person showing title, than a *judgment* would be, holden by the person in possession. If a mortgage will not authorize an action to *obtain* the possession, it surely can be no defence to justify the *retention* of the property against a party showing title.

The defendant has no equity, not having paid a cent for the moiety of the lot which belonged to Edward Burke, it appearing, by his own admission, that he retained $1500 to meet the claims of creditors.

*H. Brewster*, for the defendant, contended that the right of the plaintiff *as purchaser* at the sheriff's sale was extinguished by the payment to him of the amount of his bid ; and that the *trustees* being the representatives of the judgment debtor, had the right to redeem the property, and that by the payment of the money, they cancelled all rights under the sale, and rendered void the sheriff's certificate, so that subsequently no deed could legally be executed by the sheriff ; and if so, their directions for the execution of a deed to the plaintiff were a nullity. Besides, he insisted that the defendant, by the assignment, being a *mortgagee in possession,* had a valid title and could not be dispossessed. He entered lawfully under the conveyance from Dennis and wife, and the uniform current of decisions in this state is, that when a mortgagee so enters into possession of the mortgaged premises, he has the legal title.

*By the Court*, SAVAGE, C. J. The defendant presents
three points of defence: The *first* is in substance, that the plaintiff had no title; *Second*, title in himself from E. Burke,
through Dennis; *Third*, that he is mortgagee in possession.

The plaintiff's title depends upon the effect of the sheriff's deed. The sale by the sheriff seems to have been regular. He had in his hands three executions issued upon three judgments, one of which in favor of Joseph Burke, appears to have been satisfied long before; the others appear to have been subsisting liens; and by virtue of all these the sheriff sold the interest of Edward Burke, the defendant in the executions, on the 12th May, 1831. The plaintiff became the purchaser, and the sheriff gave him the certificate required by law. Previous to this sale, *trustees* had been appointed by virtue of proceedings against Edward Burke as an absent debtor; and those trustees, on the 31st December, 1831, paid the plaintiff $346,76, being his purchase money with ten per cent. interest thereon, as appears by his receipt set forth in the case. This payment was made by way of redemption under the statute, as appears by the notice of the trustees to the sheriff, dated on the day of the payment of the money. The question is, what was the effect of that redemption? By the statute there are two classes of persons entitled to redeem; and there are two kinds of redemption, the consequences of which are very different. The first class of persons entitled to redeem, consists of the defendant in the execution and all persons claiming an absolute title under him, as his heirs, devisees, grantees, or those who shall have acquired title by deed, sale under mortgage, or execution, *or by any other means* to the premises sold. 2 *R. S.* 370, § 46. The *trustees*, in cases of proceedings against *non-resident debtors*, &c. by virtue of their appointment and oath, it is declared by statute, shall be deemed vested with all the estate of the debtor from the first publication of the notice. 2 *R. S.* 15, § 3, *and* 41, § 6, *sub*. 1. All the title which E. Burke had in the premises, therefore, became vested in the trustees, and they were for the purpose of redemption, grantees within the statute. The defendant or his heir, devisee, grantee, &c. may redeem within one year, § 45. In this case the trustees did redeem within

one year. The second class of persons entitled to redeem consists of judgment creditors and their assignees, who may redeem after the expiration of the year allowed to the defendant and his grantees, and before the expiration of fifteen months after the sale. When the redemption is made by the defendant or his heirs, devisees, grantees, &c. the sale of the premises so redeemed, and the certificates of such sale, shall be null and void, section 49; the proceeding is at an end. When the redemption is made by creditors, the redeeming creditors, on the contrary, acquire all the rights of the original purchaser, but liable to have the property taken from them on certain conditions, by certain other creditors, in the manner particularly pointed out by sections 51, 55, &c. In such case the sheriff's sale remains effectual, and is to be consummated by a deed to the redeeming creditors. The trustees in this case, by redeeming acquired no greater rights or powers than the defendant himself would have acquired, had he redeemed. The sheriff's sale and certificate became void, and no other proceeding could be founded upon it. The deed subsequently executed by the sheriff was inoperative and void, as much so as if he had given a deed without any sale or certificate. The plaintiff therefore did not show any title in himself. I might stop here without examining the other points in the case, but as they have been argued, and may be operative in the defendant's favor if I should be mistaken in pronouncing the plaintiff's title defective, I will proceed to their consideration.

The next ground assumed by the defendant is, that he has a deed from Edward Burke to Joseph Dennis, and from Dennis to himself. The deed from Burke to Dennis bears date the 17th February, 1830, subject to all encumbrances. It was subsequent to all the encumbrances upon the property, but anterior to the issuing the attachment against Burke as an absent debtor. That deed of course overreaches the title of the trustees, and shows that the trustees were not in fact grantees of Edward Burke. He had parted with all his interest in the premises before proceedings were instituted against him; and as he had not title, of course the trustees had none. The plaintiff has introduced parol testimony to show that this

deed must have been ante-dated, as Dennis admitted after the proceedings against Edward Burke were commenced, that he had not purchased Edward Burke's share of the property. This testimony was clearly inadmissible. The counsel seem to suppose that the court will determine the question of fact. A perusal of the 36th rule of this court will show that there is some mistake on that point, and it will also show that the best way to try a cause is to submit the facts to a jury, and not to endeavor to convert the court into a jury. We have in this case the whole testimony, without a fact found or admitted; but I have thus far considered the facts stated and not controverted as facts found or agreed upon. Considering therefore the deed from Burke to Dennis as executed bona fide at the time it bears date, the consequences which I have stated follow. It is not necessary to say what is the effect of a redemption by a party who had no interest in the premises. I apprehend it is clear that in case of an attempt to redeem by such a person, the purchaser would not be obliged to receive the money, but might insist on a deed from the sheriff, when no redemption had been made by any person authorized by the statute to make such redemption; but if the purchaser chooses to receive his money and ten per cent. interest, within a year, must it not be considered as done on the behalf of the defendant in the execution, or his grantee? It certainly cannot be tolerated, that the purchaser shall receive his money and interest and yet retain his purchase—that would be unjust. If a stranger, from motives of humanity or any other motive, pays the money and the purchaser receives it, there should be an end to that sale.

The third point of defence is, that the defendant is the assignee of the mortgage given by Joseph Burke, the admitted source of title, and is in possession. He is therefore mortgagee in possession. Previous to the adoption of the revised statutes, it was well settled that a mortgagee in possession of the mortgaged premises might protect his possession by force of his mortgage. 10 *Johns. R.* 480. 7 *Cowen,* 13. The revised statutes have not altered the law in this respect, unless it is by way of inference from the provision that no action of ejectment shall hereafter be maintained by a mortgagee, or his

NEW-YORK, May, 1836.

Phyfe v. Riley.

assigns or representatives, for the recovery of the possession of the mortgaged premises. 2 *R. S.* 312, § 57. The cases deciding that a mortgagee might protect his possession by means of his mortgage, do not give as a reason for that decision that the mortgagee might recover possession in an action of ejectment ; nor do the revised statutes necessarily alter the law as to the interest vested in the parties to the mortgage ; they merely affect the remedy. Formerly, a mortgagee after forfeiture might pursue several remedies at the same time, and by so doing subject the mortgagor to unnecessary costs. The legislature may have intended merely to prevent oppression ; they certanly did not intend to give an exposition of the rights of the mortgagor and mortgagee any farther than as to the particular remedy. Much of the difficulty in establishing an uniform rule in relation to mortgages grows out of the fact, that a mortgage has been differently considered in courts of equity and courts of law. In the former it is merely a security for money, in the latter it has been understood sometimes as a conveyance upon condition. In courts of law, in this state particularly, the mortgagor is considered the true owner against all the world except the mortgagee ; and even the mortgagee has been considered merely an encumbrancer until forfeiture of the condition by non-payment of the money. Then and not till then is he considered as having an interest in the land ; then, formerly, he might claim the possession by an action of ejectment, and upon the trial prove the condition broken, and thus show a complete title. Now, by the revised statutes, the mortgagee must complete his title by other proceedings before he brings his suit ; but if the mortgagee, after forfeiture, obtains possession in some legal mode other than by an action, why should the mortgagor or those claiming under him recover the possession from the mortgagee without paying the money secured by it ? He is still considered as having the legal estate after condition broken ; having that estate and being in possession, what reason can be given why he should be turned out of possession ? Is it that he may be put to the trouble and expense of foreclosing his mortgage, and then bringing his ejectment ? Such, surely, cannot be

the policy of the law ; on the contrary, litigation and expense to parties will be saved by permitting the mortgagee to retain possession, until the mortgagor or those claiming under him shall institute proceedings in a court of equity for the purpose of redemption. It has been decided that the estate of the mortgagor, before foreclosure, is a legal estate which may be sold on execution. *Waters* v. *Stewart*, 1 *Caines' C. in Err.* 66, 70. In *Jackson* v. *Willard*, 4 *Johns. R.* 41, it was decided that the interest of a mortgagee, after forfeiture and before foreclosure, cannot be sold on execution while the mortgagor is in possession. Kent, Ch. Justice, says, " Until foreclosure, or at least until possession taken, the mortgage remains in the light of a chose in action. " " When the mortgagee has taken possession of the land, the rents and profits may, perhaps, then become the subject of computation and sale." It cannot be denied that the mortgagee has an interest in the mortgaged premises, and that interest after forfeiture is a legal interest ; it is indeed inchoate until foreclosure, but it has heretofore been considered sufficient to protect him in the possession of the mortgaged premises when legally obtained. Being unable to see in the revised statutes any thing which changes this rule of law, I am unwilling to depart from previous adjudications, unless I can perceive a clear intention of the legislature to change the rule. On the whole case, therefore, it seems to me that the defendant is entitled to judgment.