## St. John vs. Bumpstead.

If no notice is given to the owner of the equity of redemption on a foreclosure of a mortgage by advertisement, the sale is void, as to him.

Ejectment will not lie against an assignee of a mortgagee in possession.

Where a portion of the mortgaged premises had been conveyed after the mortgage was given; and on a foreclosure by advertisement, no notice was given to the owner of the premises so conveyed, and the premises were all bid off together by the assignee of the mortgage, for more than the amount due on the mortgage, and the surplus paid to the mortgagor; *Held*, that the mortgage was not foreclosed as to the part so conveyed; but was as to the rest; and that the owner of the portion which had been so conveyed, was entitled to have the value of the rest first applied in payment of the mortgage.

There being no dispute about the evidence, the construction of the description in a mortgage is a question for the court, and not the jury.

THIS was an action of ejectment, tried before Justice Willard at the Saratoga circuit. John Jackson owned lot No. 12, and William Jackson lot No. 1, lying contiguously, each said to contain 100 acres. On the 25th of April, 1842, William conveyed to John four acres off the northwest corner of lot No. 1. This is the land in question. This deed was not recorded. On the 5th day of October, 1843, John conveyed the same to Samuel St. John, and the deed was recorded on the 10th of October, 1843; and on the 20th day of January, 1850, Samuel St. John conveyed the same to the plaintiff, and the deed was recorded the next day. At the same time that William Jackson conveyed these four acres to John Jackson, John conveyed to William four acres off the southeast corner of lot No. 12. This deed was not recorded. On the 28th day of May, 1842, John Jackson gave a mortgage to William Jackson, to secure the sum of $200, in which the land was described as "all that certain tract, piece or parcel of land situate" &c. "bounded as follows, viz. bounded on the north by lands in possession of E. Consolus; on the east by land of William Jackson; and on the south by lands in possession of E. Consolus, David Gray and James Ross: and on the west by the lands of Cyrus Paul and Mr. Ross, containing 100 acres, be the same more or less." This description would apply to lot No. 12, before there was any sale or exchange of four acres.

St. John *v.* Bumpstead.

The original lot No. 1 was bounded on the north by McKindley's land; and consequently the land in question was so bounded. The mortgage was recorded on the 30th day of May, 1842; and assigned to the defendant on the 17th day of August, 1842; who caused the same to be foreclosed by advertisement under the statute, the sale being on the 8th day of April, 1847, without giving notice to Samuel St. John. On the day of sale and just before it took place, Samuel St. John, who was passing through the place where the sale was made, informed the attorney of the defendant who made the sale, that the mortgage did not include the four acres now in controversy, and explained to him the situation of the premises. He also told the defendant that the four acres were not included. The attorney said he would sell or cry the property according to the boundaries in the mortgage, and did so. The defendant bid $500, and it was struck off to him; and he paid the surplus to John Jackson some time in the ensuing fall, in the presence of Samuel St. John, who did not claim it, or forbid the payment, and had nothing to do with it. In 1842, John Jackson began the erection of a house on this four acres, and built thereon a stone barn or shed; and he was drawing lumber upon it and making preparation to build before the mortgage was given. He moved into the house in the fall of 1842. After he conveyed it to St. John, he and another at different times occupied as tenants, up to 1846. In 1851, the house being vacant, the defendant entered into possession. The judge decided that the land in controversy was included in the description in the mortgage, and refused to submit that question to the jury; and also that the foreclosure was not void as to the plaintiff and her grantor; and refused to decide that the mortgage was satisfied as to this parcel, because of the surplus, and dismissed the complaint. The plaintiff excepted, and moved for a new trial, which application was ordered to be heard at the general term.

*H. N. Merritt,* for the plaintiff.

*W. A. Beach,* for the defendant.

St. John *v.* Bumpstead.

*By the Court,* HAND, J.    If the mortgage included the land in question, the grantor of the plaintiff, at the time of the sale, was the owner of the equity of redemption ; and as he received no notice of the foreclosure, as to him and her it was a mere nullity. (*Watson* v. *Spence,* 20 *Wend.* 260. *Van Slyke* v. *Shelden,* 9 *Barb.* 278.) The defendant, however, being in possession and the assignee of the mortgage, cannot be dispossessed by ejectment. (*Phyfe* v. *Riley,* 15 *Wend.* 248. *Van Duyne* v. *Thayre,* 14 *Id.* 233.) In *Watson* v. *Spence,* (*supra,*) the defendant was neither mortgagee nor assignee of the mortgage, but entered under a void sale.

The plaintiff also claims, that if the four acres were included in the mortgage, the surplus on the sale was more, in proportion, than his part of the mortgaged premises ; and, consequently, the mortgage is satisfied as to the four acres in question. That might have been the result if the 96 acres, or a larger portion of the premises had been sold first, as it should have been if the mortgagor still owned it, or had sold it after he conveyed this parcel. But on the foreclosure, it was all sold together, and it is not known how much that larger portion of the premises would have produced. The mortgage is foreclosed as to that part, and so far the equity of redemption is gone.

The plaintiff is not without remedy. She has a right to have the value of the largest part of the mortgaged premises, if these four acres were first conveyed, first applied. And if that equals the amount of the mortgage after applying the rents and profits, &c. the mortgage will be deemed satisfied. (*Patty* v. *Pease,* 8 *Paige,* 277. *Vanderkemp* v. *Shelton,* 11 *Id.* 28. *Guion* v. *Knapp,* 6 *Id.* 35. *Stuyvesant* v. *Hall,* 2 *Barb. Ch.* 151.) And if not, the plaintiff can redeem by paying the deficiency. The court, in such a proceeding, may consider the defendant as having released the larger parcel ; or the mortgage as merged or paid, to that extent ; and in either case deduct the value of that part.

The payment of the surplus to John Jackson, with full knowledge of all the facts, did not affect the title of the real owner of the equity of redemption, who had no notice of the sale pursuant

to statute; especially after he had insisted that his premises were not included.

I think with the learned justice who tried this cause, that the mortgage included the land in question. And there was no error in not submitting that question to the jury. (*Levi* v. *Gadsby*, 3 *Cranch*, 180.) Admitting the facts to be as the plaintiff claimed, still I think this property was included. True, the land now in controversy was bounded on the north by McKindley's land, and not by that of Consalus; but it was bounded on the east by the land of William Jackson, and these four acres made the complement of 100 acres, the quantity mentioned in the mortgage. If we may look at the intention of the parties, it will hardly be supposed that they intended to include the four acres which the mortgagor had conveyed to the mortgagee only a few days before. And if the mortgage was to include the whole of lot No. 12, and that only, they would probably have designated it by the number.

[CLINTON GENERAL TERM, July 4, 1853. *Hand, Cady* and *C. L. Allen*, Justices.]