[ Filed November 13, 1889. ]

## HORATIO COOKE, APPELLANT, *v.* MARTIN L. COOPER ET AL., RESPONDENTS.

Where at a void foreclosure sale the mortgagee becomes the purchaser of the mortgaged premises, and enters into the possession thereof, and then sells and attempts to convey such premises by deed, such deed operates as an assignment of the mortgage debt, as well as the mortgage securing the same, to the grantee in such deed, and each successive deed to said premises by persons holding under such mortgage must have the same effect.

If, for any cause in the foreclosure suit, the proceeding is ineffectual to foreclose the mortgage, and the mortgagee purchases at a sale under such void proceedings, and enters into the possession under such sale, his relation to the mortgaged premises is that of a mortgagee in possession.

Under section 326, Hill's Code, a mortgagee is precluded from recovering possession of the mortgaged premises after forfeiture by action; but if he can obtain possession of such premises in any lawful or peaceable mode, that is, without force, he may retain possession of such premises, as against the mortgagor or any person claiming under him subsequent to the mortgage, until his mortgage debt is paid.

A mortgagee in possession is not to be treated as a mere stranger would be who went upon the land of another and placed improvements thereon without the owner's consent. But, on the contrary, he may lawfully take down or carry away buildings erected by him on the land mortgaged, the materials of which were his own, and not so connected with the soil that they cannot be removed without prejudice to it.

Where the right to remove a chattel from another's land exists, and the party entitled to remove is in possession of the premises, he may exercise the right of removal while so in possession, and a resort to equity is unnecessary.

APPEAL from circuit court for Multnomah county.

*Nicholas & Deady* and *Gearin & Gilbert*, for Appellant.

*Moreland & Masters*, for Respondents.

STRAHAN, J.—This cause was tried by the court below without the intervention of a jury, and the only questions of law we are required to consider arise upon the findings, which are as follows:

"(1) That A. C. McDonald, named in the complaint, died

intestate on the twenty-first day of September, 1878, seised and possessed at the time of his death of the real property mentioned in the complaint, and described as lots one (1) and two (2), in block 120, Stephens' addition to East Portland, Multnomah county, Oregon.

"(2) That said A. C. McDonald and his wife, on the twenty-third day of March, 1878, to secure the payment of part of the purchase price of the aforesaid real property, for which said A. C. McDonald had given his promissory note, executed and delivered to B. Boeschen, their vendor, a mortgage on said real property, which debt and mortgage was not paid at the date of the death of said A. C. McDonald.

"(3) That on the twenty-fifth day of August, 1879, said B. Boeschen commenced a suit in this court, in the equity department thereof, against the widow and heirs of said A. C. McDonald, deceased, to foreclose said mortgage, though no administration of the estate of said deceased had been had, nor any administrator appointed for said estate, and said mortgage had not been nor has it yet been recorded; that a supposed service of summons in said suit was made on the defendants therein, by publication, as against non-residents, and a decree of foreclosure regular in form was made and rendered by this court in said suit on the fifteenth day of October, 1879.

"(4) That pursuant to the decree of foreclosure in said suit the lands in said mortgage described, being the same lots 1 and 2, in block 120, in Stephens' addition to East Portland, in this county, which are mentioned in the complaint herein, were sold at sheriff's sale on the twenty-second day of November, 1879, and were bid off by said B. Boeschen; and, said sale having been duly approved by this court, a deed for said lots was in due form made by the sheriff to said Boeschen, which purported to convey to said Boeschen all the right, title, estate, and interest which said A. C. McDonald had in said lots at the time of his death, which deed was duly recorded in the records of deeds for this county.

"(5) That said lots passed by a regular chain of conveyances, as alleged in the answer, from said B. Boeschen to the defendant, Martin L. Cooper's intestate, the said George Cooper, deceased; the several purchasers under said Boeschen down to George Cooper entering into possession of said lots, and exercising acts of ownership over the same.

"(6) That said George Cooper's immediate vendors were in actual possession of said lots, and said George Cooper took the advice of counsel concerning the title to said lots, and procured an abstract of the title thereof to be made, and the certificate of reputable attorneys of this court, declaring the title of the Forbes', the immediate vendors of said George Cooper, in and to said lots to be good and in fee-simple ; and said George Cooper thereupon purchased said lots, and paid the full value thereof in cash, and took a deed therefor, and went into the actual possession of the same on or about the seventeenth day of March, 1885, in good faith, and fully believing that he had a good title thereto, and wholly ignorant of any adverse title thereto.

"(7) That while said George Cooper was in possession of said lots, to-wit, in the year 1886, he built upon said lots the dwelling house described in the complaint, with material and funds wholly his own, and in good faith, without notice of any adverse title, and verily believing that he was the owner in fee of said lots, and of the whole thereof.

"(8) That on June 25, 1887, an action was begun in the circuit court of the United States for the district of Oregon, against said George Cooper, by Angus McDonald, heir at law of said A. C. McDonald, in which said action said plaintiff, Angus McDonald, claimed to be owner in fee of said lots hereinbefore mentioned, and demanded possession of the same; and said United States circuit court having jurisdiction, did, in said action, on the twenty-eighth day of November, 1887, adjudge that said Angus McDonald was owner in fee of said lots, and in possession thereof, and did in substance and effect adjudge that said George Cooper had no title to said lots, and that the decree of this

court in the hereinbefore described suit of *Boeschen* v. *McDonald,* and the sheriff's deed aforesaid to said Boeschen, were invalid and of no effect.

"(9) That while said action in said United States circuit court was pending, and two days before said judgment therein had been rendered, to-wit, on the twenty-sixth day of November, 1887, the said George Cooper, the defendant, Martin L. Cooper's intestate, being still in possession of said lots, caused said dwelling erected by him as aforesaid on said lots to be removed therefrom, and had the same on the said twenty-sixth day of November, 1887, on the street near said lots, and afterwards removed the same, and placed it upon another lot belonging to said George Cooper, in the same block, and that in and by said removal of said house from said lots no injury was done to the soil of said lots, nor was there any injury to the inheritance, and said George Cooper removed nothing from said lots except what he had himself and with his own means placed thereon.

"(10) That the value of said house at the time of removal was seven hundred dollars ($700).

"(11) That said defendant W. O. Allen did not remove, nor aid or assist or advise or encourage any other person to remove, said house; that said Martin L. Cooper, defend-ant, did employ men to remove said house, and did direct them in regard to the same; but that said Martin L. Cooper, in all that he did in and about the removal of said house, was only the agent for, and acted only for and in behalf of, said George Cooper, his intestate."

As conclusions of law the court finds, from the foregoing · facts:

"(1) That the plaintiff is not entitled to recover from any of the defendants any sum whatever for said house, or the removal of the same.

"(2) That the defendants are entitled to judgment that they go without day, and recover their costs and disbursements from the plaintiff.

"E. D. SHATTUCK, judge."

"SUPPLEMENTAL FINDINGS.

"That said mortgage mentioned in finding of fact No. 2 was not produced at the trial of this action, although due notice was served upon defendant and his attorneys to produce the same, nor was its absence accounted for other than by the statement by witness (Moreland) that he had it when foreclosure suit was pending, and had looked for it since this action was begun, but that it. could not be found, and that said mortgage was never recorded in the office of the county clerk of Multnomah county, Oregon.

"E. D. SHATTUCK, judge."

1.   It does not affirmatively appear from the findings of the court below for what reason the United States circuit court for the district of Oregon adjudged the title to the premises described to be in the heir of A. C. McDonald, but no doubt it was on the ground that the circuit court in which the foreclosure proceedings were had failed to acquire jurisdiction over the heir at law of A. C. McDonald, deceased.   Nor is it material in the form in which this record is presented.   The findings, in effect, show that there was an attempted foreclosure, followed by a sale of the property; that such sale was approved by the court, and a proper deed executed to Boeschen, the plaintiff and mortgagee, who became the purchaser at the sale, and entered into the possession by virtue of said deed.   He subsequently sold his interest in said premises, which passed with the possession thereof by mesne conveyances to George Cooper, who erected the house thereon.   These conveyances, if they failed to pass title to the lots described, operated as an assignment of Boeschen's mortgage to the successive grantees named in said several deeds. *Robinson* v. *Ryan*, 25 N. Y. 320; *Winslow* v. *Clark*, 47 N. Y. 261; *Miner* v. *Beekman*, 50 N. Y. 337; *Murdock* v. *Chapman*, 9 Gray, 156; *Hinds* v. *Ballou*, 44 N. H. 619; *Smith* v. *Smith*, 15 N. H. 55; *Lamprey* v. *Nudd*, 29 N. H. 299.   If the Boeschen mortgage was not foreclosed, it remained in full force and unsatisfied, and by the conveyances set out in the find-

ings was owned by George Cooper at the time he placed the erections on the lots, and in such case his relation to the lots was that of a mortgagee in possession.

I am aware that it was said by this court in *Roberts* v. *Sutherlin,* 4 Or. 219, that a mortgagee who obtains posses- sion of the mortgaged premises with the assent of the mortgagor, after default of the latter, may retain such possession until payment of the mortgage debt.    Such possession is a good defense against an action of ejectment brought by the mortgagor, so long as the mortgage debt remains unpaid.    This is a correct statement of the law as far as it goes, but it does not go far enough.    It is true Hill's Code, § 326, provides: "A mortgage of real property shall not be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law." This provision of the statute is copied from the Revised Statutes of the State of New York (2 Rev. St. p. 312, § 57); but after the enactment of this statute it was held in that State that "if the mortgagor, after forfeiture, entered into possession either by the consent of the mortgagor . or by means of legal proceedings, he may defend himself there, at least till his debt is paid."    *Van Duyne* v. *Thayre,* 14 Wend. 234.    So it was said in *Phyfe* v. *Riley,* 15 Wend. 248:    "Now, by the Revised Statutes, the mortgagee must complete his title by other proceedings before he brings his suit; but if the mortgagee, after forfeiture, obtains possession in some legal mode other than by an action, why should the mortgagor, or those claiming under him, . recover the possession from the mortagee without paying the money secured by it?"    *Miner* v. *Beekman, supra,* was a case where the mortgagee bid off the mortgaged premises at a void foreclosure sale, and entered into the possession of the premises, and the court held, if the defendants had acquired the rights of the mortgagee, they could defend their possession by virtue of the mortgage.    So *Shriver* v. *Shriver,* 86 N. Y. 575, was also a void foreclosure by reason of the owner of the property not having been made a party

to the suit, and at the attempted sale under the decree a stranger, and not the mortgagee, became the purchaser and entered into the possession. and the court, by Folgér, C. J., said, distinguishing the case from *Miner* v. *Beekman, supra:* "The case is supposed to be like that of *Miner* v. *Beekman*, 50 N. Y. 337. It is different in an important particular. There the entry was by the mortgagee, who was also the purchaser at the sale. He thus became a mortgagee in possession, and could defend against the owner of the equity of redemption, or his representative, any action, except one for an accounting of the rents and profits, and to redeem." And this seems to be the settled rule in New York. *Casey* v. *Buttolph*, 12 Barb. 637; *St. John* v. *Bumpstead*, 17 Barb. 100; *Munro* v. *Merchant*, 26 Barb. 383; *Winslow* v. *McCall*, 32 Barb. 241; *Randall* v. *Raab*, 2 Abb. Pr. 307; *Jackson* v. *Bowen*, 7 Cow. 13; *Watson* v. *Spence*, 20 Wend. 260; *Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.*, 73 N. Y. 82; *Trimm* v. *Marsh*, 54 N. Y. 599; *Pell* v. *Ulmer*, 18 N. Y. 139; *Craft* v. *Merrill*, 14 N. Y. 456. And in such case it seems that an entry by the mortgagee, after condition broken, without actual force, is sufficient. In *Pell* v. *Ulmar, supra*, it is said: "Formerly the mortgagee could maintain ejectment, but this is prohibited by the Revised Statutes. 2 Rev. St. p. 312, § 57. If, however, the mortgagee obtains possession without force, he is entitled, as well since as before the statute, to hold it against the mortgagor. *Van Duyne* v. *Thayre*, 14 Wend. 233; *Phyfe* v. *Riley*, 15 Wend. 248; *Watson* v. *Spence*, 20 Wend. 260; *Fox* v. *Lipe*, 24 Wend. 164; *Olmsted* v. *Elder*, 2 Sandf. 325." On the point under consideration these authorities are fully approved by the court.

It results, therefore, that while a mortgagee is not per mitted to maintain a possessory action to recover the mortgaged premises by reason of the default of the mortgagor, still, if he can make a peaceable entry upon the mortgaged premises after condition broken, he may do so, and may maintain such possession against the mortgagor and every person claiming under him subsequent to the mortgage,

subject to be defeated only by the payment of his debt. This view of the law in no manner interferes with the just rights of the mortgagor, and at the same time it does not sacrifice the interest of the mortgagee to the merest tech- nicalities of the law, which have sometimes been permitted to prevail, and the mortgagee turned out of possession stripped both of the property and his mortgage debt as well.

2. Having reached the conclusion that George Cooper, at the time of the removal of the house mentioned in the pleadings, was a mortgagee in possession, he is not to be treated as a mere stranger would be, who went upon the land of another and placed improvements there without the consent of the owner. The rights of a mortgagee in possession, who had placed improvements on the mort- gaged premises, came directly before the court in *Taylor* v. *Townsend*, 8 Mass. 411, where it was held that a mortgagee, after a recovery on a bill in equity by the mortgagor to redeem, and before possession taken under the judgment, may ·lawfully take down and carry away any buildings erected by him on the land mortgaged, the materials of which were his own, and not so connected with the soil that they cannot be removed without prejudice to it. And Ewell Fixt. 287 says, in reference to this case, that the same rule was here apparently applied as in the relation of landlord and tenant, and to this we see no objection. This party owned the materials used in the construction of that house. He did not intend to part with their owner- ship. He acted in good faith in placing them on another's land while he was in the lawful possession under the belief that he owned the same, and upon the discovery of his mistake removed his structure from the land without injury to it and before he was ousted. I confess it is difficult to see the justice of a rule of law that could by mere con- struction thus take one man's property and give it to another, or, what seems still more repugnant to every sense of right, to compel a party to pay for his own property. But there is authority for carrying the principle of the right

to remove even further. In *Tyler* v. *Decker*, 10 Cal. 435; D. purchased a lot of land at sheriff's sale on execution, and entered into possession, and erected certain buildings. thereon, and afterwards removed the buildings. On the same day the buildings were removed the defendants in the execution sold the premises to T., and a day or two afterwards T. redeemed the lot from the sale, and then brought suit against D. to recover the value of the buildings. Held that, as there was no evidence that the buildings were attached to the soil, T. could not recover. *Little* v. *Willford*, 31 Minn. 173, 17 N. W. Rep. 282, is a case where a party made a deed of certain lands to "the trustees of the M. E. church for Elgin circuit," for a church building, upon which a building was erected, and the title failing because no grantees were named in the deed, it was held the building was properly removable. So in *Wickliffe* v. *Clay*, 1 Dana, 585, it was decided that where one was in possession of land held *bona fide* as his own, and had erected buildings thereon, he (or those claiming under him) might remove them without incurring any responsibility to the owner of the paramount title.

It was argued by counsel for the appellant that while it might be true that George Cooper would in equity have been entitled to claim compensation for the house placed on the land, or possibly to have been entitled to retain the possession of the property until he had been paid for his improvements, as in *Hatcher* v. *Briggs*, 6 Or. 31, the right is purely equitable in its nature, and must be sought in that forum only. If George Cooper's heirs or legal representative were seeking compensation for betterments placed upon another's lands by him in his life-time, no doubt appellant's contention might be sustained. If the improvements were of such a nature that they were not removable, such as grubbing, clearing land, and the like, as in *Hatcher* v. *Briggs*, *supra*, then the only remedy open to him would be in equity, where complete relief would be administered on equitable principles; but when he has simply placed his own chattels on such lands under the

honest belief that he owned such lands, and had reason so
to believe, and acted in good faith in the matter, and upon
the discovery of the true *status* of the title he removes such
chattels, though they had been erected into a house, it is
not perceived that he has in any manner injured the plain-
tiff, or that equity could be successfully invoked in such
case.    There is no occasion for the interposition of equity,
for the reason that such party has exercised the right to
remove his chattel, and he has no cause of suit against the
owner of the land.

These conclusions lead to an affirmance of the judgment
of the court below, and it is so ordered.